UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES MITCHELL,<br><br>*Petitioner*,<br>v.<br><br>COMMISSIONER OF CORR.<br><br>*Respondent*. | Case No. 3:25-CV-00930 (KAD)<br><br>October 2, 2026 |

**<u>MEMORANDUM OF DECISION</u>**
**RE: RESPONDENT'S MOTION TO DISMISS (ECF NO. 11)**

Kari A. Dooley, United States District Judge:

Petitioner James Mitchell, a self-represented inmate in the custody of the Connecticut Department of Corrections, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2005 conviction and sentencing. Pet. Writ Habeas Corpus, ECF No. 1 [hereinafter "Pet."]. Respondent moves to dismiss the petition, arguing Petitioner failed to exhaust his state court remedies as to several claims raised in the Petition. *See* Resp't's Mot. Dismiss, ECF No. 11 [hereinafter "Mot."]; Mem. Law Supp. Resp't's Mot. Dismiss, ECF No. 12 [hereinafter "Mot. Br."]. Petitioner opposes. Pet'r's Obj. Resp't's Mot. Dismiss, ECF No. 19 [hereinafter "Opp Br."]. For the reasons set forth below, the Motion is **GRANTED**.

**Standard of Review**

In reviewing a motion to dismiss a petition for writ of habeas corpus, the Court applies the same standard as when reviewing a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). *Spiegelmann v. Erfe*, No. 17-CV-2069, 2018 WL 1582549, at *1 (D. Conn.

Mar. 29, 2018). To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a petition must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. A court "must confine its consideration to facts stated on the face of the [p]etition, in documents appended to the [p]etition or incorporated in the [p]etition by reference, and to matters of which judicial notice may be taken." *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018) (quoting *Williams v. Breslin*, 274 F. Supp.2d 421, 425 (S.D.N.Y. 2003)). Where a court takes judicial notice of documents filed in separate litigation, it may do so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

**Failure to Exhaust**

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by AEDPA." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Section 2254(b)(1) provides that a federal court generally cannot grant habeas relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Failure to exhaust such remedies may be excused only if "there is an absence of available [s]tate corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). A petitioner may not, however, simply wait until appellate remedies are no longer available and then argue that the

claim is exhausted. *See Galdamez v. Keane*, 394 F.3d 68, 72–74 (2d Cir. 2005), *cert. denied*, 544 U.S. 1025 (2005).

"The exhaustion doctrine recognizes that state courts, no less than federal courts, are bound to safeguard the federal rights of state criminal defendants." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Thus, "[t]he exhaustion requirement . . . serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) (noting that the purpose of the exhaustion doctrine is "to prevent unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution" (citation and internal quotation marks omitted)). "To provide the State with the necessary 'opportunity' [to pass upon and correct an alleged violation of its prisoner's federal rights], the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted); *see also Picard*, 404 U.S. at 275 ("We emphasize that the federal claim must be fairly presented to the state courts.").

A petitioner's claims may be presented to the state courts on either direct review or state post-conviction proceedings. "A prisoner does not have 'to ask the state for collateral relief, based on the same evidence and issues already decided by direct review.'" *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (quoting *Brown v. Allen*, 344 U.S. 443, 447 (1953)). However, review in the highest court must be sought, even if such review is discretionary and unlikely to be granted. This "give[s] the state courts one full opportunity to resolve any constitutional issues by invoking

one *complete* round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845 (emphasis added); *see* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has a right under the law of the State to raise, by any available procedure, the question presented.").

Moreover, a petitioner only satisfies the exhaustion requirement if he presents the essential factual and legal bases of his federal claim to each appropriate state court, including the highest state court capable of reviewing it. This allows the state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (internal quotation marks and citation omitted); *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003) (exhaustion of state remedies requires a petitioner to present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it" (citations omitted)).

However, a federal claim has only been fairly presented to the state courts if it "alert[s] that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (alterations and quotation marks omitted). A petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material … that does so." *Id.* at 32. Thus, "the claim presented to the state court … must be the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (citations omitted).

**Pro Se Petitioners**

Where, as here, a petitioner filed his habeas petition *pro se*, a court must construe his filings liberally and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). But "[d]espite the special solicitude that the

court must show [a petitioner] out of consideration for his *pro se* status, his petition must still include sufficient factual allegations to meet the standard of facial plausibility to survive a motion to dismiss under Rule 12(b)(6)." *Anderson v. Williams*, No. 15-CV-1364, 2017 WL 855795, at *6 (D. Conn. Mar. 3, 2017) (italicization added; citation and internal quotation marks omitted).

**Procedural History**

The litigation surrounding Petitioner's attempts to challenge his 2005 conviction and sentence has been lengthy and extensive. The Court recounts this procedural history as relevant to its review of Respondent's Motion.[1]

**2005 Conviction**

The facts underlying Petitioner's conviction are set forth below, as summarized by the Appellate Court in his direct appeal.

> On August 23, 2003, [Petitioner received a phone call from a female acquaintance (the "victim") requesting a ride home from [a friend's house in East Hartford].[2] Wanting to return home, and with her residence too distant to walk, the victim called [Petitioner] for a ride. The victim [called Petitioner] because she knew that Denasha Sanders, the mother of one of [Petitioner's] children, had lived in the same building as the victim and [Petitioner] was frequently in the vicinity. [Petitioner] and the victim's brother had had a prior confrontation concerning the fact that the victim's brother had dated Sanders. …
>
> [Petitioner arrived to pick up the victim in a gold Nissan Altima with another man in the car, later identified as Travis Hampton.] The victim agreed to go with [Petitioner] and Hampton to downtown Hartford to get something to eat. Upon leaving the restaurant, [Petitioner] became violent with the victim, striking her with his cell phone and demanding to know the location of the victim's brother. Out of fear [Petitioner] would harm her, the victim lied to [Petitioner] and told him that her brother was at her grandfather's house. The victim attempted to leave the car,

[1] The Court takes judicial notice of federal and state court filings and dockets brought to the Court's attention in these proceedings, for the limited purpose of establishing that such litigation occurred.

[2] On direct appeal from conviction, the Connecticut Appellate Court adopted the following facts, which it determined could reasonably have been found by the jury. *See State v. Mitchell,* 110 Conn. App. 305, 308-10, 955 A.2d 84 (2008). The Court has indicated where these facts have been modified for brevity.

> but [Petitioner] pulled her by the hair and locked the doors[,] … [while] Hampton remained in the backseat of the vehicle.
>
> [Petitioner] subsequently determined that the victim's brother was not at her grandfather's house. He drove the victim and Hampton to his mother's house in Hartford and ordered the victim out of the car. The victim briefly complied and then returned to the vehicle while Petitioner and Hampton entered the house. When [Petitioner] and Hampton had returned, the three proceeded to leave the area by car. … [Petitioner then] drove to Market Street in Hartford and parked his vehicle … [and propositioned the victim for sex]….
>
> The victim refused and got out of the car, intending to walk home. [Petitioner] produced a shotgun, which he gave to Hampton, who pointed the weapon at the victim's face. [Petitioner] and Hampton told the victim to remove her pants [and Petitioner] raped her …. [Petitioner then] forced the victim to perform fellatio on Hampton. The victim complied briefly, and Hampton proceed to rape her . . ., while [Petitioner] regained and held the shotgun. The victim grabbed her pants and yelled at [Petitioner] to let her leave. [Petitioner] told the victim she could get into a nearby dumpster or run. As the victim attempted to run, [Petitioner] shot her in the side of the stomach. The victim continued her attempt to run away, followed by Hampton, who now had the shotgun. [Petitioner] pursued the victim in the car and blocked her path. Hampton shot the victim again. He and [Petitioner] then left the scene. Shortly thereafter, [Petitioner] and Hampton returned briefly and then left the area again. The victim dragged herself to the street, where she was found by a passing driver. The police and paramedics were summoned, and the victim was taken to Hartford Hospital for treatment.

*State v. Mitchell,* 955 A.2d 84, 87–89 (Conn. App. Ct. 2008).

Following a jury trial in the Connecticut Superior Court, Petitioner was convicted of: attempted murder, in violation of Connecticut General Statutes §§ 53a–49(a), 53a–8, and 53a–54a; conspiracy to commit murder, in violation of Connecticut General Statutes §§ 53a–48(a) and 53a–54a; kidnapping in the first degree, in violation of Connecticut General Statutes §§ 53a–8 and 53a–92(a)(2)(A); conspiracy to commit kidnapping in the first degree, in violation of Connecticut General Statutes §§ 53a–48 and 53a–92(a)(2)(A); sexual assault in the first degree, in violation of Connecticut General Statutes §§ 53a–8 and 53a–70(a)(1); conspiracy to commit sexual assault in

the first degree, in violation of Connecticut General Statutes §§ 53a–48 and 53a–70(a)(1); assault in the first degree, in violation of Connecticut General Statutes § § 53a–8 and 53a–59(a)(5); conspiracy to commit assault in the first degree, in violation of Connecticut General Statutes §§ 53a–48(a) and 53a–59(a)(5); and criminal possession of a firearm, in violation of Connecticut General Statutes § 53a–217(a)(1). *See State v. Mitchell*, No. HHD-CR03-573482-T, 2005 WL 6490544 (Conn. Super. Ct. Nov. 04, 2005). On November 1, 2005, judgment was entered, and the trial court imposed a total sentence of fifty-seven years of imprisonment. *Id.*

Petitioner subsequently appealed his conviction to the Connecticut Appellate Court. *Mitchell*, 955 A.2d at 87. The appellate court affirmed the trial court's judgment on September 16, 2008. *Id*. at 99. Following the appellate court's ruling, Petitioner filed a petition for certification to the Connecticut Supreme Court. Pet. Conn. Sup. Ct. Certif., *State v. Mitchell*, 959 A.2d 1012 (Conn. 2008) (No. SC 080199). His petition for certification was limited to the following issues:

(1) whether the appellate court improperly analyzed Petitioner's prosecutorial impropriety claim by concluding that Petitioner invited the prosecutor's questioning of three defense witnesses regarding Petitioner's alleged prior abusive conduct;

(2) whether the appellate court erroneously concluded that it was harmless that the prosecutor brought out details of Petitioner's prior felony conviction; and

(3) whether the appellate court improperly concluded that the trial court did not err in failing to declare a mistrial when three state witnesses testified about Petitioner's criminal history.

*See id*. On November 5, 2008, the Connecticut Supreme Court denied Petitioner's request for certification to appeal the decision of the appellate court. *Mitchell*, 959 A.2d 1012.

**Petition for New Trial**

In February 2006, Petitioner filed a petition for a new trial in the Connecticut Superior Court. *See Mitchell v. State of Connecticut*, No. CV06-4021601-S, https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHDCV064021601S (last visited Sep. 14, 2026); *Mitchell v. State*, No. CV064021601S, 2016 WL 5339515 (Conn. Super. Ct. Aug. 22, 2016). In his final operative petition, he brought several claims, as paraphrased below:

(1) a claim that "new developments" in technology to enhance a video shown at the original trial constituted "newly discovered" evidence that would show that it was Petitioner's co-defendant, rather than Petitioner, who exited the vehicle to approach the victim;

(2) a claim that a detective-witness's subsequent *nolo contendere* plea to forgery constituted "newly discovered" impeachment evidence warranting a retrial; and

(3) several claims related to allegations of prosecutorial misconduct.[3]

*See* Am. Pet. New Trial, *Mitchell*, 2016 WL 5339515 [hereinafter "Am. Pet. New Trial"]; *see also Mitchell*, 2016 WL 5339515 at *3–5. On August 22, 2016, the petition for a new trial was denied.

---

[3] As summarized by the Connecticut Supreme Court, Petitioner alleged the prosecution withheld:

> (1) selective portions of videotape and photographic evidence that would have been inconsistent with the victim's version of events, (2) materials produced by Angelsea Critical Evidence, the company hired by the state to assess the security camera video and still frames and to produce viewable copies, (3) [the detective-witness's] malfeasances that were occurring concurrently with his investigation of [Petitioner], (4) evidence relevant to whether a second blood sample was taken, and (5) the dismissal of charges pending against the victim in consideration for her testimony.

*Mitchell v. State*, 257 A.3d 259, 282 (2021); Am. Pet. New Trial. Petitioner further alleged "that the prosecution presented false testimony from the victim regarding [Petitioner's] actions on Market Street." *Mitchell*, 257 A.3d at 282.

*Mitchell*, 2016 WL 5339515 at *6. In reaching its decision, the trial court (1) rejected Petitioner's first claim as to the "new developments" in technology; (2) agreed with Petitioner that his second claim as to the detective witness's guilty plea constituted newly discovered evidence, but reasoned that the evidence was immaterial; and (3) found each of Petitioner's prosecutorial misconduct claims either meritless or immaterial. *Id.* at *3-5.

Pursuant to Connecticut General Statute § 54-95(a), Petitioner had ten days to seek certification from the trial court to appeal the judgment denying the petition for a new trial but missed the deadline. *See Mitchell v. State*, No. CV064021601S, 2017 WL 5505621, at *1 (Conn. Super. Ct. Oct. 12, 2017); § 54-95(a). More than a year later, Petitioner sought leave to file a petition for certification to appeal the trial court's denial of his petition for a new trial. *See id.* at *1. The trial court denied the request, determining the request to appeal was untimely and Petitioner's claims were meritless. *See id.* Following Petitioner's appeal of this denial, the appellate court dismissed the appeal and determined the trial court did not abuse its discretion. *Mitchell v. State*, 204 A.3d 807, 810 (Conn. App. Ct. 2019).

Thereafter, Petitioner filed a petition for discretionary review with the Connecticut Supreme Court asking whether: (1) the Appellate Court erred when it dismissed his appeal; (2) the trial court abused its discretion in denying Petitioner's request to file a late petition for certification; and (3) the Connecticut Supreme Court should adopt a rule requiring the court clerk to provide written notification of the petition requirement. Pet. Conn. Sup. Ct. Certif., *Mitchell v. State*, 205 A.3d 567 (Conn. 2019) (No. SC 180380). The Connecticut Supreme Court granted the petition, but limited its review to the following question: "Did the Appellate Court correctly conclude that

the trial court did not abuse its discretion in denying [Petitioner's] late petition for certification to appeal?" *Mitchell v. State*, 205 A.3d 567 (Conn. 2019).

The Connecticut Supreme Court determined "the trial court abused its discretion by failing to engage in the proper analysis to determine whether to excuse the late petition for certification." *Mitchell v. State*, 257 A.3d 259, 262 (Conn. 2021). However, in reviewing the underlying merits of the petition for new trial, the Connecticut Supreme Court determined that while the technologically enhanced video showed that Petitioner's co-defendant exited the car, Petitioner had not shown a new trial was warranted insofar as the new evidence was neither "meaningfully exculpatory" nor likely to "have had a significant impeachment effect at trial." *Id.* at 278–80. As Petitioner's claims concerning the detective-witness's *nolo contendere* plea, the Connecticut Supreme Court held the trial court did not abuse its discretion in determining "no court would conclude that evidence of [the detective-witness's] arrest and conviction probably would yield a different result in a new trial." *Id.* at 280–82. It likewise determined "the trial court did not abuse its discretion in concluding that none of [Petitioner's] prosecutorial impropriety claims warrants appellate review." *Id.* at 282–83. Thus, it affirmed the appellate court's ultimate judgment dismissing the appeal, finding "the trial court acted within its discretion when it determined that the petition did not raise issues warranting certification." *Id.* at 262.

**First State Habeas Action**

Petitioner filed his first state habeas action on April 13, 2010. *Mitchell v. Warden*, No. CV104003523, 2013 WL 4504829, at *2 (Conn. Super. Ct. Aug. 1, 2013), *aff'd sub nom. Mitchell v. Comm'r Corr.*, 114 A.3d 168 (Conn. App. Ct. 2015). In his amended petition dated June 11, 2012, Petitioner asserted claims that his right to effective assistance of counsel under the Sixth

Amendment was violated on multiple grounds. *Id*. at *2. The first state habeas court rejected Petitioner's claims and denied the petition. *See id.* at *8.

Petitioner then appealed the first state habeas court's denial of his petition to the Connecticut Appellate Court. *See Mitchell*, 114 A.3d at 169. The appellate court determined Petitioner had raised two claims on appeal: first, that "his trial counsel rendered ineffective assistance by failing to advise him of the essential elements of the crimes with which he was charged," *id.* at 171; and second, that the first state habeas court "improperly rejected his claim that the failure of his trial counsel to investigate certain videotape evidence adequately constituted ineffective assistance," *id.* at 172. The appellate court declined to reach the merits of the first claim, finding Petitioner had "abandoned the claim as a result of his failure to brief it before the habeas court." *Id.* at 171 (citation omitted). As to the remaining claim, "the evidence on which [Petitioner] base[d] his claim of ineffective representation as well as [the appellate court's] evaluation of the strength of the state's case" led the appellate court to conclude that "[P]etitioner ha[d] not satisfied his burden of demonstrating that the claimed deficiency in the performance of his trial counsel was prejudicial under [*Strickland v. Washington,* 466 U.S. 668, 687 (1984)]." *Id.* at 177–78. It thus affirmed the first Habeas Court's denial of his petition. *Id*. at 178.

Petitioner then sought certification to the Connecticut Supreme Court for discretionary review of the Appellate Court's affirmance. Pet. 78. The sole question presented was: "Did the Appellate Court err when it failed to address [Petitioner's] claim that his trial court attorneys were ineffective for failing to advise him of the essential elements of the crimes for which he was charged?" *Id*. The Connecticut Supreme Court denied certification on May 20, 2015. *Mitchell v. Comm'r of Corr.*, 114 A.3d 1220 (Conn. 2015).

**Second State Habeas Action**

On or about March 26, 2014, while his first state habeas action was pending, Petitioner filed a second state habeas action. Pet. 104. Following a hearing and briefing on his second amended petition, the second state habeas court dismissed several claims, determining they were barred under the doctrine of *res judicata*. *Mitchell v. Warden*, No. CV144006076, 2019 WL 5681369, at *2–4 (Conn. Super. Ct. Oct. 10, 2019). By the time his second state habeas action reached trial, Petitioner had filed six amended petitions. *See* Pet. 104. One claim, which was based on the Court's application of the Connecticut Supreme Court's decision in *State v. Salamon*, 949 A.2d 1092 (Conn. 2008),[4] was disposed of before trial, after the court granted respondent's motion for summary judgment. *See Mitchell v. Warden, State Prison*, No. CV14-4006076, 2023 WL 2582597, at *4 (Conn. Super. Ct. Mar. 15, 2023); Pet. 107. The remaining claims – in which Petitioner asserted eleven subclaims of ineffective assistance of habeas counsel – proceeded to trial. *See Mitchell*, 2023 WL 2582597 at * 4; Pet. 107–110. Following a four-day trial, the second state habeas court denied the second state habeas petition. *Id.* at *17.

In March of 2023, the second state habeas court denied Petitioner's petition for certification to appeal its judgment. *See Mitchell*, No. CV14-4006076, Entry No. 198.00, https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV144006076S (last visited Sep. 15, 2026). Thereafter, Petitioner appealed the second state habeas court's denial of his request for certification to appeal. *See Mitchell v. Comm'r of Corr.*, 330 A.3d 263,

[4] In *Salamon*, the Connecticut Supreme Court held that a criminal defendant cannot be convicted of kidnapping, in conjunction with another crime, if the confinement or movement is "merely incidental to and necessary for the commission of another crime against that victim." 949 A.2d 1117.

*cert. denied,* 333 A.3d 106 (2025). The Connecticut Appellate Court held that the second state habeas court "did not abuse its discretion in denying … certification to appeal" and dismissed the appeal on February 4, 2025. *Id.* at 270.

Petitioner then sought the discretionary review of the Connecticut Supreme Court. *See* Pet. 192–206. His petition raised the following questions for review:

> (1) Should [the Connecticut Supreme Court] exercise its supervisory authority to examine and remedy the history of prosecutorial misconduct, judicial error, and attorney incompetence that has substantially undermined [Petitioner's] rights?
> (2) Did the State's failure to disclose the exculpatory opinion of its own expert constitute a violation of [*Brady v. Maryland,* 373 U.S. 83 (1963)] …, and was first habeas counsel ineffective for failing to adequately plead and present that claim in [Petitioner's] first habeas proceeding?[5]
> (3) Did [Petitioner] suffer ineffective assistance of counsel related to the acceptance of a pretrial offer?
> (4) Was [Petitioner] entitled to a *Salamon* instruction at trial related to the kidnapping charges?

*Id.* at 192–93. The Connecticut Supreme Court denied the petition for certification on April 9, 2025. *Mitchell*, 333 A.3d at 106.

**Motion for Correction of Illegal Sentence**

In 2014, Petitioner filed a motion for correction of an illegal sentence pursuant to Practice Book § 43-22. Mot. Correct Illegal Sentence, *State v. Mitchell*, No. HHD-CR03-573482-T. Petitioner's motion consisted of two claims: first, that certain merged conspiracy convictions should have been vacated; and second, that his convictions for sexual assault in the first degree and assault in the first degree constituted "double jeopardy" in light of Petitioner's conviction for conspiracy to commit kidnapping in the first degree. *Id.* The trial court granted the motion as to

[5] In *Brady,* the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

Petitioner's first claim and Petitioner's sentences of conspiracy to commit murder, conspiracy to commit sexual assault in the first degree, and conspiracy to commit assault in the first degree. *See State v. Mitchell*, 195 Conn. App. 543, 548 (Conn. App. Ct. 2020). Conversely, the trial court denied the motion as to Petitioner's second claim. *Id.* at 249.

Petitioner appealed from the trial court's ruling rejecting his double jeopardy claim and the appellate court affirmed the judgment of the trial court. *State v. Mitchell*, 227 A.3d 522 (Conn. App. Ct. 2020). Petitioner sought review of the Appellate Court's judgment, solely presenting the double jeopardy question. *See* Pet. Conn. Sup. Ct. Certif., *State v. Mitchell*, 229 A.3d 118 (Conn. 2020) (No. SC 190403). The Connecticut Supreme Court denied his petition for certification to appeal on March 25, 2020. *Mitchell*, 229 A.3d at 118.

**Third State Habeas**

On July 12, 2023, Petitioner filed his third state habeas action which is currently pending and set for trial on March 15, 2027. *See Mitchell*, No. CV23-5001523, https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV144006076S (last visited Oct. 1, 2026).

**Federal Habeas Corpus Proceedings**

Including this action, the Court is aware of Petitioner bringing a total of three habeas actions in federal court under Section 2254. In 2016, Petitioner's first petition was dismissed because he had not properly exhausted most of his claims. *Mitchell v. Comm'r of Corr.*, No. 3:16CV486(DJS), 2016 WL 6573941, at *4 (D. Conn. Nov. 4, 2016). Then, in 2021, Petitioner's second petition was dismissed because Petitioner did not present a question cognizable on habeas review. *Mitchell v. State of Connecticut*, No. 3:21-cv-531 (AWT) (D. Conn. May 19, 2021), ECF No. 9.

## Discussion

In his Motion, Respondent moves to dismiss the Petition because Petitioner has failed to meet the requirements of Section 2254(b) with respect to each of his claims. *See* Mot.; Mot. Br. Having considered the record and Petitioner's Opposition Brief, the Court finds Petitioner failed to satisfy Section 2254(b)(1) as to each of his claims and further concludes dismissal is appropriate.

### 1. Petitioner did not properly exhaust each of his claims.

Before addressing whether Petitioner has satisfied Section 2254(b)(1) as to each of his claims, the Court will first distill the voluminous procedural history into a more manageable format. In sum, the record before the Court establishes that, on direct appeal of his conviction, Petitioner presented the following questions to the Connecticut Supreme Court:

(1) whether the trial court correctly concluded that Petitioner invited questioning concerning his alleged prior abuse;
(2) whether the prosecutor's references to Petitioner's prior convictions during the trial was a harmless error; and
(3) whether the trial court abused its discretion in declining to declare a mistrial after testimony concerning Petitioner's criminal history.

Further, the following questions reached the Connecticut Supreme Court in its consideration of Petitioner's appeal of the judgment denying his request to file a late petition for new trial:

(1) whether the trial court abused its discretion in denying Petitioner's request to file a late petition for certification;
(2) whether the appellate court erred in dismissing his appeal of the trial court's denial of his petition for a new trial;
(3) whether the Connecticut Supreme Court should adopt a rule requiring the court clerk to provide written notification of the petition requirement;
(4) whether new "new developments" in technology to enhance a video shown at the original trial constituted "newly discovered" evidence warranting a new trial;
(5) whether the detective-witness's subsequent plea to forgery constituted "newly discovered" impeachment evidence warranting a new trial;

(6) whether prosecution improperly withheld selective portions of videotape and photographic evidence that would have been inconsistent with the victim's version of events;
(7) whether prosecution improperly withheld materials produced by Angelsea Critical Evidence, the company hired by the state to assess the security camera video and still frames and to produce viewable copies;
(8) whether prosecution improperly withheld information concerning the detective-witness's malfeasances that were occurring concurrently with his investigation of Petitioner;
(9) whether prosecution improperly withheld evidence relevant to whether a second blood sample was taken;
(10) whether prosecution improperly withheld information concerning the dismissal of charges pending against the victim in consideration for her testimony; and
(11) whether the prosecution presented false testimony from the victim regarding Petitioner's actions on Market Street.

Then, in appealing his first state habeas claim, the following questions were raised to the Connecticut Supreme Court:

(1) whether Petitioner's trial court attorneys were ineffective for failing to advise him of the essential elements of the crimes for which he was charged;
(2) whether the appellate court erred in declining to address the merits of his ineffective assistance of counsel claim.

Next, Petitioner raised the following questions to the Connecticut Supreme Court in the appeal of his second state habeas action:

(1) whether the Connecticut Supreme Court should "exercise its supervisory authority to examine and remedy the history of prosecutorial misconduct, judicial error, and attorney incompetence that has substantially undermined [Petitioner's] rights";[6]
(2) whether prosecution improperly withheld the exculpatory opinion of its own expert;
(3) whether habeas counsel in the first action was ineffective for failing to adequately argue that the State's failure to disclose the exculpatory opinion of its own expert constituted a Brady violation;
(4) whether Petitioner suffered ineffective assistance of counsel related to the acceptance of a pretrial offer; and

[6] To the extent this overly broad claim could be read to encompass his present claims, the claims underlying his petition in the second habeas action were limited to claims brought against habeas counsel and claims related to the Court's alleged failure to follow precedent set by the Connecticut Supreme Court in *Salamon*.

(5) whether Petitioner was entitled to a *Salamon* instruction at trial related to the kidnapping charges.

Finally, in the appeal of his motion for correction of an illegal sentence, Petitioner brought the following question to the Connecticut Supreme Court:

(1) whether Petitioner's convictions for sexual assault in the first degree and assault in the first degree constituted "double jeopardy" in light of Petitioner's conviction for conspiracy to commit kidnapping in the first degree.

In the present petition, Petitioner has asserted a total of twenty-one claims, divided into four sub-categories: (1) violations of *Brady*; (2) prosecutorial failures to correct false testimony; (3) ineffective assistance of counsel; and (4) "other constitutional violations." Pet. 23–24. Respondent concedes that, based on his review of Petitioner's procedural history, Petitioner has exhausted state remedies as to his first, second, and nineteenth claims. Mot. 29–30, 34–35. In his opposition brief, Petitioner indicated that he now "waives and abandons" his seventeenth and eighteenth claims. Opp Br. 4. As for the remaining claims, Petitioner avers that each has been exhausted or that he should be excused from meeting the exhaustion requirement. *Id.* at 3–4.

At the outset, the Court notes that there are deficiencies in the Petition which would not only impede consideration of the merits of Petitioner's claims, were the Court to reach them, but which also limit the Court's ability to determine whether those claims have been exhausted. Rule 2(c) of the Rules Governing § 2254 Cases provides that a "petition must: (1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury.

Here, Petitioner's claims are presented in a one-sentence format, without further description of the facts. And, while Petitioner utilized a form petition which prompted him to

outline the grounds for relief, describe the supporting facts, and identify any state proceedings related to his case, Petitioner failed to comply with the format of the petition or otherwise provide the requested information.

While Petitioner provided attachments of some of his state court pleadings and decisions, these attachments neither provide a complete record of his state-court proceedings, nor do they sufficiently clarify the grounds for relief underling his claims. The record in this matter is voluminous. Petitioner was convicted in 2005 and has initiated several ongoing state court proceedings to challenge his conviction in the years that followed. In establishing the relevant procedural history, Petitioner has provided over two hundred pages of exhibits attached to his Petition and Respondent has provided twenty-seven exhibits in support of his Motion. And, while both the Court and Respondent have made substantial efforts to ascertain the specific grounds for relief by comparing them to the available procedural record, *see* Mot. Br. 29–35, Petitioner's allegations are too sparse, and the procedural history to extensive, to permit the Court to reasonably determine the bounds of each of the claims presented with sufficient specificity.

Moreover, although Petitioner had an opportunity to clarify the ambiguities identified by Respondent in his opposition brief, he failed to provide any further specificity regarding his claims. Opp Br. Instead, Petitioner responded simply that certain claims have been exhausted or that he should be excused from meeting exhaustion requirements because he either lacks an opportunity to obtain redress in the state courts or because any efforts to obtain redress would prove futile. *Id*. Once again, Petitioner does not assert when and where he exhausted these claims, and if not, why he has not had the opportunity to obtain redress or was otherwise unable to return to state court to obtain redress.

Without sufficient clarity as to the grounds underlying his habeas claims, the Court declines to, and is indeed unable to, determine whether the requirements of Section 2254(b)(1) have been met for each claim. Even so, it is evident from the record that the Connecticut Supreme Court has, at minimum, not had a fair opportunity to consider Petitioner's claims that:

(1) "[t]he state's prosecutor failed to disclose financial inducements given to its key witnesses";
(2) "[t]he state's prosecutor failed to disclose an illegal search by the lead detective";
(3) "[t]he state's prosecutor failed to correct false testimony given by lead detective/investigator"; and
(4) "[t]he courts errored by not following the federal standards [set forth in *Napue v. People of State of Ill.*, 360 U.S. 264 (1959) regarding] false testimony and failure to correct obligations."

*See* Pet. 23–24. None of these claims could be considered the "substantial equivalent" of the claims raised to the Connecticut Supreme Court, and thus, these claims clearly have not been exhausted at the state level. *See Jones*, 329 F.3d 290; *O'Sullivan*, 526 U.S. at 845. And, while Petitioner asserts generally that, to the extent his claims have not been exhausted, the exhaustion requirement "should be excused," *see* Opp. Br. 1, Petitioner has not alleged any facts or argument to show he has otherwise been denied "the opportunity to obtain redress in state court" or to show that "the corrective process is so clearly deficient to render futile any effort to obtain relief," *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam). Indeed, he still has a habeas petition pending which is scheduled for trial and may yet be subject to amendment.

Accordingly, Petitioner has not satisfied Section 2254(b)(1) as to these claims. The Petition thus can be characterized as a "mixed" petition, or a petition containing a combination of claims that satisfy the requirements of Section 2254(b)(1) and claims that do not. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). As to the remaining claims, the Court declines to undertake further review to resolve the ambiguities surrounding them or to determine whether they could fairly be

considered exhausted, as doing so would neither alter the Petition's categorization as a mixed petition nor would it otherwise affect the disposition of the Petition.

**2. Dismissal is appropriate.**

Where a petitioner files a "mixed" petition, the reviewing court may (1) stay the petition for a limited period of time to allow the petitioner the opportunity to properly exhaust the claims in state court, *Rhines*, 544 U.S. at 277; (2) dismiss the petition without prejudice; or (3) permit the petitioner proceed on the properly exhausted claims, *Zarvela v. Artuz*, 254 F.3d 374, 378–80 (2d Cir. 2001); *see also Carolina v. Connecticut*, No. 3:17-CV-754 (SRU), 2021 WL 3855612, at *2 (D. Conn. Aug. 27, 2021) (discussing treatment for mixed petitions).

As a preliminary matter, the Court finds that a stay is not the appropriate recourse here. A stay of federal habeas proceedings is appropriate only in where: (1) the petitioner had "good cause" for his failure to fully exhaust, (2) the unexhausted claims are "potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. Petitioner has not identified any sufficient cause for his failure to fully exhaust his claims, *see* Pet.; Opp. Br., which is dispositive of the issue of whether a stay is appropriate. Moreover, as addressed, Petitioner has not presented his claims in a manner that permits the Court to readily assess their likelihood of succeeding on the merits. And, while a court should grant a stay "where an outright dismissal 'could jeopardize the timeliness of a collateral attack,'" Petitioner does not face an immediate risk of having his claims barred by the statute of

limitations. *Zarvela v. Artuz*, 254 F.3d 374, 380 (2d Cir. 2001), *as amended* (June 26, 2001), *as amended* (Aug. 17, 2001) (quoting *Freeman*, 208 F.3d at 577).[7]

In sum, the Court concludes that the Motion to Dismiss should be granted. However, dismissal shall be without prejudice to the filing of a renewed Section 2254 petition after the claims are fully exhausted in the state courts. *See Slack v. McDaniel*, 529 U.S. 473, 485–89 (2000); *see also Green v. Quiros*, No. 3:20-CV-1217 (CSH), 2021 WL 1670293, at *4–5 (D. Conn. Apr. 27, 2021).

**Conclusion**

For the foregoing reasons, Respondent's Motion to Dismiss, ECF No. 11, is **GRANTED**. The Petition is **DISMISSED** without prejudice to refiling a new petition after Petitioner has properly exhausted available state court remedies as to all grounds upon which he would seek

---

[7] The AEDPA provides a one-year statute of limitations for federal habeas actions filed by prisoners in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1); *Murphy v. Strack*, 9 F. App'x 71, 72 (2d Cir. 2001). Specifically, the AEDPA provides that the limitations period shall run from the latest of —

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. § 2244(d)(1).

"The Second Circuit has held that the one-year statute of limitations period imposed by AEDPA for filing a federal habeas petition does not begin until the completion of direct appellate review in the state courts and either the denial of a petition for certiorari by the United States Supreme Court or the expiration of the time within which to file a petition for a writ of certiorari." *Edwards v. Choinski*, No. 305CV444MRK, 2005 WL 3334442, at *2 (D. Conn. Dec. 5, 2005) (citing *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001)). "AEDPA's statutory tolling provision also provides that the 'time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. . . .'" *Clemente v. Lee*, 72 F.4th 466, 476 (2d Cir. 2023) (quoting 28 U.S.C. § 2244(d)(2)).

Upon review of Petitioner's extensive state court litigation, the Court finds that the one-year AEDPA limitations period has not yet began to run. Petitioner has had either direct appellate review proceedings or a state post-conviction proceeding pending from shortly after his conviction to present, including a pending third habeas action that is set for trial in 2027.

federal habeas corpus relief.[8] The Court concludes that jurists of reason would not find it debatable that Petitioner failed to properly exhaust his state court remedies on all grounds asserted in this Petition. Thus, a certificate of appealability will not issue. *See Slack*, 529 U.S. at 484 (holding that when a district court denies a habeas petition on procedural grounds, a certificate of appealability should issue if jurists of reason would find debatable the correctness of the district court's decision).

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of October 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

[8] The Court cautions Petitioner that, should he file a Section 2254 in the future, he should adhere to the Rules Governing § 2254 proceedings by specifying all the grounds for relief available and the facts supporting each ground. Petitioner should also specify whether he has exhausted his administrative remedies for each claim and describe which state court motion, petition, or proceeding in which he raised his corollary federal habeas claim so that the Court may properly determine whether Petitioner has sufficiently exhausted his administrative remedies for each claim.